UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANTHONY SHAFFER**, <br><br> Plaintiff, <br><br> v. <br><br> **MARK ZAID**, *et al.*, <br><br> Defendants. | Case No. 20-cv-2492 (CRC) |

**MEMORANDUM OPINION**

Retired military intelligence officer Anthony Shaffer has sued his former lawyer, Mark Zaid, and his law firm for malpractice. Shaffer alleges three instances of derelict representation over an intermittent twelve-year professional relationship with Zaid. Finding two of the allegations time-barred and the third insufficient to state a claim, the Court will grant Zaid's motion to dismiss the case.

**I.   Background**

   A.   Factual Background

The Court draws the following background from Shaffer's complaint and materials it references. Although Zaid has filed a lengthy factual declaration in support of his motion to dismiss, see Decl. of Mark Zaid, ECF No. 7-1, and both parties raise facts outside the complaint in their briefing, the Court must limit itself to the pleadings when deciding a motion to dismiss. See, e.g., Thomas v. Pompeo, 438 F. Supp. 3d 35, 40 (D.D.C. 2020). Otherwise, as Mr. Zaid and his counsel surely appreciate, the Court would have to convert his motion to dismiss under Rule 12(b)(6) to one for summary judgment under Rule 56 and provide Shaffer an opportunity to contest through discovery any disputed material facts offered by Zaid in his declaration. The Court also must take the facts alleged in the complaint as true at this early stage of litigation and

make all reasonable inferences from those allegations in favor of the plaintiff.  See, e.g., Sissel v. U.S. Dep't of Health & Hum. Servs., 760 F.3d 1, 4 (D.C. Cir. 2014).

      1.  *The "Able Danger" Program*

Anthony Shaffer is a retired Lieutenant Colonel previously employed by the U.S. Army and the Defense Intelligence Agency ("DIA").  Compl. ¶¶ 2, 10, 16.  During his time at the DIA, Shaffer participated in Able Danger, a once-classified government program created in 1999 to counter the rise of Al-Qaeda.  Id. ¶ 18, 19.  The program's primary purpose was to identify operational vulnerabilities within the terrorist group, and Shaffer was tasked with covertly accessing the group's computer systems.  Id. ¶¶ 17, 20.  According to Shaffer, Able Danger uncovered two of the Al-Qaeda cells that ultimately carried out the September 11, 2001, attacks on the World Trade Center and Pentagon.  Id. ¶ 21.  Shaffer claims that he alerted his DIA superiors to this information in September 2000, but that they never shared the information with the FBI and prematurely shuttered the program prior to the attacks.  Id. ¶ 18, 22.

In 2004, Shaffer revealed the existence of Able Danger to the 9/11 Commission, opining that the government's termination of the program squandered an opportunity to prevent the September 11th attacks.  Id. ¶ 2.  Shaffer alleges that the government responded by "launch[ing] a retaliatory campaign to revoke [his] security clearance and terminate him from government service."  Id. ¶ 3.  The DIA suspended Shaffer's security clearance in March 2004 and it was permanently revoked two years later.  Id. ¶ 26.

2.  *Shaffer's Initial Retention of Zaid*

Sometime in 2005, Shaffer retained Mark Zaid to represent him in connection with congressional testimony about Able Danger.  Id. ¶ 27.[1]  Shaffer's complaint provides no further information about that representation, aside from a general allegation that Zaid "assisted him throughout the process" and that "it was during this time [Shaffer] lost his clearance and was wrongfully terminated by the DIA."  Id. ¶ 42.  Additionally, Shaffer alleges that he informed Zaid that "he wanted to sue for damages and file a complaint for the loss of his clearance and wrongful termination."  Id. ¶ 43.  "While [Zaid] did assist [Shaffer] with his security clearance revocation," he purportedly "failed to file a complaint with the Office of Special Counsel (OSC) regarding the retaliation Plaintiff faced from the DIA."  Id.  According to Shaffer, Zaid informed him that filing a complaint with OSC "would be a conflict of interest[.]"  Id.[2]

3.  *First Amendment Litigation over Shaffer's Memoir*

In 2007, Shaffer penned a memoir titled *Operation Dark Heart: Spycraft and Special Ops on the Frontlines of Afghanistan*.  Id. ¶ 29.  As required under a non-disclosure agreement that he entered into with the Army, Shaffer submitted the memoir for prepublication review.  Id. ¶ 30.

---

[1] Shaffer's filings provide sparse and conflicting information about the representation stemming from his congressional testimony.  To take one example, Shaffer alleges that he testified before Congress regarding Able Danger in 2015.  See Compl. ¶ 41.  The Court takes "2015" to be a scrivener's error, given that the claimed instances of retaliation—the suspension and revocation of Shaffer's security clearance—occurred in 2004 and 2006.  In any event, it is a matter of public record—of which the Court may take judicial notice—that Zaid testified before the Senate Judiciary Committee on Shaffer's behalf in September 2005.  Shaffer v. Def. Intel. Agency, 601 F. Supp. 2d 16, 21 (D.D.C. 2009); see also Shaffer v. Def. Intel. Agency, 102 F. Supp. 3d 1, 7 & n.4 (D.D.C. 2015).

[2] Although not described in the complaint, Zaid also represented Shaffer in proceedings before retired Judge Gladys Kessler of this court, in which Shaffer sought an injunction compelling the government to permit him to discuss classified material with his counsel in connection with his congressional testimony.  That lawsuit was filed in 2006 and voluntarily dismissed in 2009.  See Shaffer v. Pierce, No. 06-cv-271 (D.D.C. dismissed July 10, 2009).

According to Shaffer, the manuscript received a "favorable" review from the Army until the DIA and Central Intelligence Agency obtained a copy of it and determined that it contained classified information.  Id. ¶ 31.  In August 2010, the Army revoked publication approval for the book based on objections lodged by the DIA and CIA.  Id. ¶ 32.  Shaffer responded by agreeing to modify any objectionable passages and redact any text that could not be modified to the parties' satisfaction.  Id.  This agreement led to the redaction of over three-quarters of the book's pages.  Id.

In December 2010, Zaid filed a complaint on Shaffer's behalf in this court, alleging that the DIA violated the First Amendment by depriving him of the right to publish his book without certain redactions.  Id. ¶ 33.  The Court will refer to this case as the "First Amendment litigation."  After five years of litigation, now-retired Judge Rosemary M. Collyer granted Shaffer summary judgment on the issue of whether he could publish information from his 2006 testimony before the House Armed Services Committee.  Id. ¶ 35; see also Shaffer v. Def. Intel. Agency, 102 F. Supp. 3d 1, 15 (D.D.C. 2015).  Having found in his favor, Judge Collyer invited Shaffer to "proceed on a claim for attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § [2]412."  Compl. ¶ 36 (quoting Shaffer, 102 F. Supp. 3d at 12 n.11).

A party seeking fees under the EAJA must submit an application for fees to the court within 30 days of the final judgment.  See 28 U.S.C. § 2412(d)(1)(B).  Shaffer does not allege that he received an extension of this deadline, and the Court's review of the case docket reveals none.  See generally Docket, Shaffer v. Def. Intel. Agency, et al., No. 10-cv-2119 (D.D.C. dismissed November 13, 2015).  Zaid never filed an application for attorney's fees.  Id. ¶¶ 37–39.

*4. The John Crane Disclosure*

The complaint references no interactions between Shaffer and Zaid following the conclusion of the First Amendment litigation until the fall of 2017. Earlier that year, a former Assistant Inspector General for the Department of Defense, John Crane, had submitted a "Disclosure of Urgent Concern" to DoD's Inspector General's office. Compl. ¶ 46. Mr. Crane alleged in that disclosure that DIA mishandled the Able Danger program and retaliated against Shaffer "for making disclosures in the course of his official duties[.]" Id. ¶¶ 46–47.

On September 6, 2017, Shaffer contacted Zaid about pursuing a retaliation claim against the DIA in light of the Crane disclosure. Id. ¶ 57.[3] According to Shaffer, Zaid had "represented [him] in [sic] an ongoing and continuous basis" at that time. Id. Nonetheless, Zaid "immediately responded" to Shaffer's inquiry by informing him that "he would no longer be able to represent [him] as it was a conflict of interest." Id. ¶ 58. Shaffer says that Zaid provided no explanation of the conflict of interest. Id. ¶ 59. Based "[o]n information and belief," however, Shaffer surmises that "a conflict may have existed long before the Crane affidavit came to light." Id. ¶ 59. The only basis Shaffer offers for this belief is that Zaid "represents several corrupt government officials." Id.

B. Procedural Background

Shaffer filed the present complaint against Zaid on September 6, 2020, exactly three years after Zaid declined to represent him in connection with a retaliation claim against the

---

[3] In their briefs, the parties also discuss a meeting that both men attended following the Crane disclosure and subsequent email exchanges between the two in the summer of 2017. Compare Mot. to Dismiss at 6, 12, 13 with Opp. at 11, 13. Their accounts of these events differ, but the Court does not wade into this dispute, as there is no mention of any such meetings or correspondence in Shaffer's complaint.

DIA.[4]  The Complaint seeks over $1 million in compensatory and punitive damages.  See Compl. ¶¶ 70–71.  In Count One, Shaffer alleges that Zaid committed legal malpractice by (1) failing to seek damages or apply for attorney's fees in the First Amendment case, which lasted from 2010 to 2015; (2) failing to pursue a claim against the DIA for "[w]histleblower [r]etaliation" following the revocation of his security clearance in 2006 and his subsequent termination; and (3) failing to disclose the existence of a conflict of interest until 2017.  See id. ¶¶ 63–71.[5]  In Count Two, Shaffer alleges that the same conduct constituted a breach of fiduciary duty.  Id. ¶¶ 72–77.

Zaid has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  He argues that Shaffer's legal malpractice claims are barred by the applicable three-year statute of limitations, Mot. to Dismiss at 10–14, and that the breach of fiduciary duty claims must likewise be dismissed because they are duplicative of the malpractice claims, id. at 18–19.  Shaffer rejoins that the so-called "continuous representation rule" should toll the running of the statute of limitations until September 6, 2017, when he says Zaid officially terminated their attorney-client relationship.  Opp. at 7–8.

## II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that fails "to state a claim upon which relief can be granted."  In analyzing a Rule 12(b)(6) motion, the court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to

---

[4] Shaffer's complaint names both Mark S. Zaid and the law firm Mark S. Zaid, P.C., as defendants in this action.  For ease of reference, the Court will refer to them both as Zaid.

[5] Again, Shaffer neglects to pinpoint when any of these alleged instances of malpractice occurred.  The Court has deduced these timeframes by taking judicial notice of the proceedings involving Shaffer before Judge Collyer (No. 10-cv-2119) and Judge Kessler (No. 06-cv-271) and by piecing together the few dates provided elsewhere in the complaint.

6

'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court must "accept as true all of the complaint's factual allegations and draw all reasonable inferences in favor of the plaintiffs," but need not "accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations." Owens v. BNP Paribas, S.A., 897 F.3d 266, 272 (D.C. Cir. 2018). In addition to the allegations within the four corners of the complaint, the court may consider "documents attached thereto or incorporated therein, and matters of which it may take judicial notice." Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006).

### III. Analysis

The Court first considers Shaffer's legal malpractice claim before turning to his claim for breach of fiduciary duty.

#### A. Legal Malpractice Claim

In the District of Columbia, the statute of limitations governing a legal malpractice claim is three years. Wagner v. Sellinger, 847 A.2d 1151, 1154 (D.C. 2004); see D.C. Code § 12–301(8). A claim for legal malpractice accrues when "a plaintiff knows, or by the exercise of reasonable diligence should know, of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing." Wagner, 847 A.2d at 1154. The limitations period is tolled in some instances, however, when the attorney continues to represent the client following the alleged malpractice. Under the continuous-representation rule, a "malpractice cause of action does not accrue until the attorney's representation concerning the *particular matter in issue* is terminated." R.D.H Commc'ns, Ltd. v. Winston, 700 A.2d 766, 768 (D.C. 1997) (emphasis added); see also Seed Co. Ltd. v. Westerman, 832 F.3d 325, 332 (D.C. Cir. 2016) (statute of limitations for a legal malpractice claim is tolled "during the time the attorney continues to represent the client in the

relevant matter"). The purpose of the rule is to prevent clients from "having to choose between (i) disrupting an ongoing lawyer-client relationship to enable bringing a malpractice claim and (ii) continuing the relationship but relinquishing the claim." Seed Co., 832 F.3d at 332 (citing Bradley v. Nat'l Ass'n of Sec. Dealers Disp. Resol., 433 F.3d 846, 850 (D.C. Cir. 2005)).

Shaffer alleges Zaid committed legal malpractice in three respects during what he describes as an "ongoing and continuous" period of legal representation spanning some twelve years. *First*, he contends that Zaid failed to seek attorney's fees upon the successful conclusion of the First Amendment litigation in 2015. Compl. ¶ 66a. *Second*, he maintains that Zaid failed to pursue a retaliation claim against the DIA following the revocation of his security clearance in 2006 and his subsequent termination. Id. ¶ 66b. *Finally*, he alleges based "on information and belief" that Zaid concealed a conflict of interest that "prevented him from pursuing" the retaliation claim against the DIA. Id. ¶ 66c. (The existence of a conflict was not apparent to him, Shaffer says, until September 6, 2017, when Zaid cited an unspecified conflict as the reason for discontinuing the representation following John Crane's disclosures to the DoD Inspector General's office. Id.)

As noted, Shaffer filed this suit on September 6, 2020, and the applicable statute of limitations is three years. Absent application of the continuous-representation rule, any claim based on alleged malpractice accruing before September 6, 2017 would be time barred. The only one of Shaffer's three malpractice allegations that falls within three years of the complaint is the claim that Zaid concealed a conflict, which Shaffer says he did not discover until exactly three years before filing suit. Accordingly, resolution of Zaid's motion to dismiss requires the Court to determine (a) whether the continuous-representation rule tolled the accrual of the two earlier malpractice claims—*i.e.*, failing to seek attorney's fees in the First Amendment case and failing

to file a retaliation claim against the DIA following the revocation of his security clearance and termination—and (b) whether Shaffer has stated a claim based on Zaid's purported concealment of a conflict of interest, which does fall within the limitations period.

### 1. Failure to Seek Attorney's Fees in First Amendment Case

The Court begins with Zaid's failure to seek attorney's fees following the First Amendment litigation. To recap, Judge Collyer entered partial summary judgment in Shaffer's favor on March 26, 2015. See Shaffer v. Def. Intel. Agency, 102 F. Supp. 3d 1 (D.D.C. 2015). In her ruling, she invited Shaffer to apply for attorney's fees under the EAJA. Id. at 12 n.11. The EAJA gives prevailing parties 30 days from judgment to apply for fees. See 28 U.S.C. §2412(d)(1)(B). The case docket, which is subject to judicial notice, indicates no extension of that deadline and a final dismissal of the case. See Docket, Shaffer v. Def. Intel. Agency, No. 10-cv-2119 (D.D.C. Apr. 21, 2015). Shaffer's subsequent appeal was dismissed by the D.C. Circuit on November 10, 2015. See Shaffer v. Def. Intel. Agency, No. 15-5180, 2015 WL 9008153, at *1 (D.C. Cir. Nov. 10, 2015). Thus, litigation of the First Amendment case ended no later than November 2015. The question, then, is whether Shaffer has alleged any facts to suggest that Zaid's representation of him "*in th[at] specific matter*" continued after November 2015.[6] Winston, 700 A.2d at 768 (emphasis added); see also Bradley, 433 F.3d at 850 ("[T]he malpractice cause of action does not accrue until the attorney's representation concerning *the particular matter in issue* is terminated.") (emphasis added). He has not.

---

[6] Zaid attests that he "did some minimal follow-up work in connection with [the First Amendment litigation] through early summer 2016," but did no further work after July 2016 at the latest. Mot. to Dismiss at 5; see also id., Ex. 1 at 12. The Court cannot consider anything outside Shaffer's factual allegations at this stage, without converting the motion to one for summary judgment. But even if the Court were to assume Zaid's representation on the First Amendment litigation continued until July 2016, this would not change the outcome, as there is no indication that Zaid worked on that matter in the three years prior to the filing of this suit.

The only post-2015 interaction between Shaffer and Zaid described in the complaint concerns Shaffer's request, nearly two years later, that Zaid pursue a retaliation case against the DIA in light of the Crane disclosures. Here is the full description:

> On September 6, 2017, Plaintiff contacted Defendant, who had represented Plaintiff in an ongoing and continuous basis, regarding the Affidavit and disclosure by Crane to discuss options of pursuing a retaliation claim. Defendant immediately responded he would no longer be able to represent Plaintiff as it was a conflict of interest. At no point did Defendant explain the conflict of interest.

Compl. ¶¶ 57–58. These allegations are insufficient to trigger the continuous-representation rule. For one, the statement "[Zaid] had represented Plaintiff in [sic] an ongoing and continuous basis" is entirely conclusory. Id. ¶ 57. It is no substitute for concrete factual allegations suggesting the existence of an ongoing attorney-client relationship as late as 2017. Cf. Hiligh v. Sands, 389 F. Supp. 3d 69, 75–76 (D.D.C. 2019) (Cooper, J.) (specific allegations of ongoing attorney work arising from the same incident supported application of the continuous-representation doctrine at the motion-to-dismiss stage). Sticking just to the facts alleged in the complaint, they do not allow an inference that Zaid and Shaffer were in an attorney-client relationship in September 2017. If anything, they suggest the opposite: that Shaffer approached Zaid about filing a new lawsuit but Zaid declined the representation due to a conflict.

Moreover, even if the complaint could be read to infer the existence of an attorney-client relationship in 2017, the parties' discussion of a potential retaliation suit is not sufficiently intertwined with the First Amendment litigation to toll the statute of limitations. Defining the "particular matter at issue," Bradley, 433 F.3d at 850, for purposes of the continuous-representation rule can be difficult in some cases, Hiligh, 389 F. Supp. 3d at 74 ("[T]he precise contours of the continuous-representation rule are sometimes murky, and it is not always easy to discern exactly what constitutes a 'particular matter' in which a lawyer's representation was

continuous."). But it is clear here that a potential retaliation claim against the DIA over Shaffer's termination based on the Crane disclosure is distinct from the First Amendment litigation challenging the government's prepublication redaction of Shaffer's memoir. While both matters generally relate to Shaffer's government employment, any potential retaliation claim would involve different subject matter, would be based on different precipitating events occurring at different times, would take place in different fora, would raise different legal claims, and would seek different remedies. The continuous-representation rule therefore does not apply. Cf. Hiligh, 389 F. Supp. 3d at 75 (applying continuous-representation rule where separate lawsuits stemmed from same tort injury).

> 2. *Failing to File a Claim Following the Revocation of Shaffer's Security Clearance*

Nor does the continuous-representation rule save Shaffer's claim that Zaid committed malpractice by not filing an administrative retaliation claim against the DIA after it revoked his security clearance. The precise timing of this claim is unclear from the complaint. Shaffer alleges that he first retained Zaid in 2005 in connection with congressional testimony regarding Able Danger, and that his security clearance was revoked in 2006. Compl. ¶¶ 25–26, 41–42. According to Shaffer, "[i]t was during this time" that he "was wrongfully terminated by DIA." Id. ¶ 42. Assuming *arguendo* that these two areas of representation involve one "matter at issue," any claim for malpractice based on these events accrued (at the latest) in 2006. It was not until *eleven* years later, in 2017, that Shaffer contacted Zaid about filing a claim based on the Crane disclosures.

True to its name, the continuous-representation rule "tolls the statute of limitations for a legal malpractice claim during the time the attorney *continues* to represent the client in the relevant matter." Seed Co., 832 F.3d at 332 (emphasis added). Even assuming the parties' 2017

11

discussion related to Shaffer's congressional testimony and security clearance revocation, the complaint alleges no facts to suggest that Zaid continued to represent Shaffer with respect to those matters in the intervening eleven years.[7]  See Gallucci v. Schaffer, 507 F. Supp. 2d 85, 91 (D.D.C. 2007) (declining to apply the rule where plaintiff offered no evidence of contacts with his lawyer about the relevant matter between the alleged malpractice and a phone call 28 years later).  Zaid's representation of Shaffer in the First Amendment case does not help Shaffer because, as discussed above, those were different matters.  Nor does Shaffer's wholly conclusory allegation of an "ongoing and continuous" attorney-client relationship suffice to trigger the rule.  As a result, the continuous-representation rule does not toll the three-year limitations period on this claim.

This result fits with the purpose of the rule, which is to free clients from the Sophie's Choice of accepting malpractice or jeopardizing their case by suing their lawyer midstream.  See Rocha v. Brown & Gould, LLP, 101 F. Supp. 3d 52, 74 (D.D.C. 2015) ("[C]ourts in this Circuit consistently look to the continuous representation rule's purpose—which is to avoid placing a client in the untenable position of suing his attorney while the latter continues to represent him." (internal quotation marks omitted)).  The dilemma is avoided so long as the matter continues.  But once the relevant matter ends, the limitations clock starts to tick.  And maintaining a general

---

[7] Shaffer does not indicate in his complaint when he was terminated from DIA.  His opposition asserts that he was not terminated until 2009.  Opp. at 3.  Both Shaffer's complaint and Zaid's filings, however, indicate that Shaffer was fired sometime earlier.  Compl. ¶ 42 (alleging that Shaffer "was wrongfully terminated by the DIA" while he "was acting as a [w]histleblower and testifying before Congress"); id. ¶¶ 26, 35, 40 (alleging that Shaffer's security clearance was revoked in 2006 and that he testified before Congress in February 2006); see also Mot. to Dismiss at 3 (asserting that Shaffer was fired in the fall of 2006).  The distinction is without a difference when applying the continuous-representation rule.  If Shaffer's termination claim accrued in 2009 rather than 2006, then there was an eight- rather than eleven-year lapse in representation about any retaliation claim.

relationship with the lawyer or hiring him for separate matters doesn't stop the ticking. See, e.g., Encyclopaedia Britannica, Inc. v. Dickstein Shapiro, LLP, No. 10–0454 (JDB), 2012 WL 8466139 at *13–16 (D.D.C. Feb. 2, 2012) (patent prosecution and subsequent patent infringement litigation constituted separate matters at issue for purposes of continuous-representation rule); Rocha, 101 F. Supp. 3d at 72 (trial court litigation and subsequent appeal constituted separate matters at issue for purposes of the continuous-representation rule).

Shaffer's complaint alleges no interactions with Zaid related to his Able Danger revelations in the eleven years between the agency's revocation of his security clearance in 2006 and his conversation with Zaid about the Crane disclosures in September 2017. He therefore had ample opportunity to claim malpractice within the three years following the clearance revocation without imperiling Zaid's work on that matter. The continuous-representation rule does not excuse him from filing his malpractice claim within the three-year limitations period.[8] Accordingly, this claim is time-barred.

### 3. Alleged Concealment of a Conflict of Interest

Finally, Shaffer alleges that Zaid committed malpractice by concealing a conflict of interest that prevented him from pursuing a retaliation claim against the DIA. Compl. ¶ 66c. Shaffer claims that he was unaware of the existence of the conflict until Zaid "finally" revealed it in their September 2017 conversation when explaining why he could not represent Shaffer following the Crane disclosure. Id. This allegation also fails. Shaffer's sole support for the

---

[8] The same would be true even if Zaid's representation in the First Amendment litigation were deemed related to his representation in the security clearance revocation matter. As discussed above, the First Amendment case ended in 2015 and the only subsequent interaction between the parties alleged in the complaint concerns Zaid's *declination* of representation in 2017. Compl. ¶¶ 57–59. Therefore, Shaffer has not alleged facts demonstrating a "continuous" representation after 2015.

13

claimed concealment of the conflict is "information and belief" grounded on an assertion that Zaid "represents several corrupt government officials." Id. ¶ 59. Though a plaintiff may base allegations on "information and belief" in certain circumstances where "the necessary information lies within defendants' control," those allegations must "be accompanied by a statement of facts" that renders the allegation plausible. Kareem v. Haspel, 986 F.3d 859, 866 (D.C. Cir. 2021). Shaffer offers no such facts here. He does not suggest how Zaid's purported representation of unnamed "corrupt government officials" prevented Zaid from representing him over a decade earlier in the security clearance matter. Nor does he explain how these other client matters support a plausible inference that Zaid concealed the existence of a conflict until 2017.

What's more, Shaffer's allegations elsewhere in the complaint contradict his assertion that Zaid concealed the existence of a conflict until their September 2017 conversation. Specifically, Shaffer alleges that Zaid informed him during the 2006 security clearance revocation matter that he could not file a retaliation complaint because "it would be a conflict of interest." Compl. ¶ 43. Shaffer thus acknowledges that he was on contemporaneous notice that Zaid may have suffered from a conflict, yet he stood pat for over decade.

Similarly unpersuasive is Shaffer's passing argument that the limitations period should be tolled due to Zaid's "fraudulent concealment" of the purported conflict. See Opp. at 13-14. This is not a case where a lawyer's concealment of information deprived the client of knowledge of a potential malpractice claim. Shaffer contends that Ziad failed to pursue a retaliation claim against the DIA following the revocation of his clearance and failed to seek attorney's fees following the First Amendment litigation *"despite [Shaffer's] explicit written requests."* Compl. ¶ 66 (emphasis added). In his own telling, then, Shaffer not only was aware of Zaid's alleged failings, he was actively disputing them at the time they occurred. There is no basis for tolling

the limitations period under these circumstances. See Diamond v. Davis, 680 A.2d 364, 377 (D.C. 1996) (tolling due to fraudulent concealment unavailable where plaintiff was on notice of potential claim).

    B.  Breach of Fiduciary Duty

In Count Two, Shaffer alleges a breach of fiduciary duty. As a matter of judicial economy, courts dismiss claims for breach of fiduciary duty that merely restate malpractice claims. Hinton v. Rudasill, 384 F. App'x 2, 3 (D.C. Cir. 2010); Biomet Inc. v. Finnegan Henderson LLP, 967 A.2d 662, 670 n.4 (D.C. 2009). Shaffer's breach of fiduciary duty claim and his malpractice claim are based on the same set of facts and seek identical relief. See Compl. ¶¶ 66, 72–75. The Court will therefore dismiss the breach of fiduciary duty as duplicative of the malpractice claims.

### IV.  Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to dismiss. A separate Order will follow.

                                                                   CHRISTOPHER R. COOPER
                                                                   United States District Judge

Date: September 27, 2021